Good morning, and may it please the Court, I'm Elizabeth Olsen-White for the United States Judicial Council. When the District Court granted the defendant's motion to suppress, it made clear errors of law, and the Court was so focused on those erroneous legal conclusions that it simply disregarded that the officers in this case had, at the very least, reasonable suspicion, perhaps even probable cause, but at the very least, to detain the defendant for the three minutes that it took to get the dog out of the car. Well, let's go back before the three minutes. Okay. They purported to stop him for a traffic violation. Are you relying on the traffic violation or on reasonable suspicion with regard to drugs? The traffic violation. Okay. So they stop him for a traffic violation, and they take him out of the car, and  they say, we're not going to give you a ticket, right? And then they say, but we have to check warrants. Now, I understand everybody thinks you have to check warrants. Why do you have to check warrants if you're not going to give him a ticket, number one? Number two, then after they check the warrants, what's the justification for doing that? Then they say, well, now that's some of our time goes by, and then they say we have to check the felon records. What's the justification for that if you're not giving him a ticket? Before you ever get to the three minutes. Well, Deputy Zirkle testified. He was asked specifically about the statement that I'm not going to give you a ticket. I just want to check things out. And what he said is that when he said that, he was because of the information that he had gotten from the DEA agent, he thought there might be something going on here. And so he wanted to kind of diffuse the situation. But why does he get to do that if he's stopping him for a traffic violation? Why waiting for his backup to arrive? I mean, yes. Well, I mean, I understand that you could have a pretext stop. But could you have a pretext 20 minute seizure? Well, in this case, I think I guess the question is when he said, I'm just going to give you a warning. I think that's the thing that you're that you're keying on. And what the officer testified is that the reason that he said that is because he wanted to just sort of keep things calm while he waited for his backup to arrive. Okay. But why does he get to do that? Why is he why does he get to seize him for 20 minutes on a traffic violation? He wasn't really going to give him a ticket because he didn't even stop him to give him a ticket. So given that, why does he get to why does he get to do this ex-felon check, for example? What does that have to do with the traffic stop? I think that the that whether the officer subjectively was intending to give the driver a ticket. Leave the ticket part out of it at this moment. He did say that, but leave it out for a moment. Yes. Still, why does he get to go to go do an ex-felon check? Why does he get for seven or eight minutes? What the you know, what this what the courts have said is that I mean, the courts have said you can. No, they say we've said that you can't prolong to an unreasonable duration. Yes. And 20 minutes. I mean, we're sitting there watching this video and it's like watching paint dry. And you kind of wonder. So was the backup because he feared for his safety? He didn't testify. No. Recall, he was fearing for his safety. No, but this actually goes to the to the first point that I wanted to make, which is when the uncontested testimony is that when Deputy Zirkle walked up to the car and on the passenger side rolled down the window, he smelled the very strong odor of methamphetamine coming from the inside of the car. That in and of itself would give a prudent officer reasonable suspicion to believe that criminal activity is afoot. And in fact, under a number of this court's cases, that in and of itself would give the officer probable cause to now your argument is that he wasn't really at that point stopping him for a traffic violation. He was stopping him because he thought there was methamphetamine. He when he approached the car, he smelled the odor of methamphetamine coming from the car, even though it was in all wrapped in packs. There was there was methamphetamine at the end of the day, what they found was methamphetamine, marijuana and a pipe. And the mouth all wrapped up and sealed. It was wrapped up in a sunglasses case, but there was also a pipe with drug residue on it. One of the problems questions in this case would be that the district court, because of its legal theory, never got to the point of making any factual findings. Yes. Such as whether he believed that the officers actually smelled that or whether that was a pretext also. Yes. Well, and that's true. The judge didn't because the judge adopted this view based on, as I say, this misinterpretation of some dicta from this Nevada Supreme Court case took the view that once the officer told the defendant he was free to go, that somehow erased or negated all of the reason. So all that means is we couldn't affirm on the ground that there was probable cause on our original suspicion with regard to the methamphetamine because we have no findings on that. We could remand, but we couldn't affirm. Oh, we couldn't reverse. I mean, I couldn't reverse. So unusual when it comes to this case. I'm not used to going first either. Well, I mean, you know what, yes, you could, you could vacate and remand for factual findings on that. I mean, what we have on the, on the video tape is, you know, we've got the officer's testimony that he smelled meth. You've got contemporaneous, the, the two officers talking together on the, on the tape about, you smell that odor from the car, yeah, it's bad. When he gets the passenger, when Deputy Zirkle gets the passenger out of the car to do the dog sniff, he explains to her, you know, I'm going to have my dog run out of, run around the car because I smell this strong odor of methamphetamine. Why didn't he do that first? Well, I, I'll tell you, I think that, um. Just to clarify, the pretext stop, nobody's contesting that at this point. That's shown, you know, on the video. So he's operating on the knowledge, as you say, that this is a guy who's running drugs. So your argument, as I understand on the drugs, drug sniff, which comes after a 19 minute delay, uh, is okay because they had reasonable suspicion. Well, I just, but now what you're telling us, they had reasonable suspicion as soon as he walked up to the passenger side. So why didn't he do the dog sniff then? Well, I'll tell you because, I mean, I'll tell you my understanding of this court's cases. And, and I think any experienced law enforcement officer would know that he may very well think that A, B, C, and D adds up to reasonable suspicion, but the district court might disagree. And even if the district court agrees, this court might disagree. So what was he trying to do then? I mean, he tried to, he was hoping that all these warrant checks would turn up something. Was that what he was doing? Well, they try to, they, they, they go through the process of the routine stop to collect information, to spend a little bit of time talking. I know, but I've always wondered about that. I would like somebody to explain to me why it is that once you stop somebody for a traffic violation, I mean, some of the cases don't say much. They just assume it. Yes. But some of them say, well, it's for officer safety. Okay. In this instance, the guy gets out of the car, he pats him down, he knows he doesn't have any right. And he says, and I'm not going to give you a ticket, all right? Whether that, I mean, I don't quite get why, if he says that, he's not bound by it. That's what he said. And then, so he could have just let him go, and he wouldn't have any officer safety problem. But instead, he spends another 15 minutes running checks. Why does he get to do that? Just because he stopped somebody for a traffic violation. It's – I mean, I know that it is routine practice, and I know that they do it. And it's never – I mean, the – and the – Well, our cases actually say it's usually okay, but there are circumstances where it is. In this – in this case, I think that what you've got is an officer who believes he has reasonable suspicion and, like I say, under some of this Court's cases, even probable cause. But what officers do, and what they're trained to do, is to try to get consent. But the point that we're wrestling with, Counsel, is he's doing everything to – that's off point. Yes. I understand Chavez Valenzuela, which I wrote, got limited or overruled. Okay? But – so it's – there has been that expansion. I do understand that. But to leave somebody – I mean, he happened to be on an off-ramp. Chavez Valenzuela, the guy was out on the side of a very busy freeway. This could have happened on that busy freeway or highway. He pulled him onto an off-ramp. But he could have stopped. Yeah, he waited. But it could just as easily have happened with cars whizzing by. And you've got these people sitting in a car for 19 minutes while he goes through a bunch of steps which are fortuitous in the case of the felony warrant. That's what took so much time. He goes through the driver's license and the warrants, and then the felony registration, I guess, is the one that he – it goes on forever. And he ultimately did – And then he does the drug sniff, which is what he was supposedly stopping him for in the first place. Yes. So the totality of this stop winds up being 23 minutes. Yes. Okay. So, you know, there are cases that said the routine stop. In fact, I think there's evidence in this case that maybe it goes as long as 15 minutes. Zirkle testified that his average stop is in the 10 to 15-minute range. And this one was 19 minutes before the officer handed him his stuff back and attempted to get consent. And then once the defendant refused consent, then he went back to plan A and said, I'm going to take three minutes and run the dog around the truck. But this idea that once he told the defendant he was free to go, he could no longer take into account the totality of the circumstances in determining whether he had reasonable suspicion. Well, that may be. But still, the totality of the circumstances is why is he dragging it out for so long? There is – there are limits under the Supreme Court law and our law about prolonging these investigations. And there's always the reference back to ordinary, you know, what it takes. You don't have to rush through or whatever. But to hold somebody on the side of a busy freeway for 23 minutes, as it turns out, but even 19 minutes in order to what, to see if he somehow gets entrapped into saying something incriminating? You know, this is – It doesn't make a lot of sense. Yeah. It is. And I understand – I mean, I completely understand what you're saying. You know, my only response is that, you know, this is what it is. These are the steps that the officers go through in a traffic stop. But when the district court said this was a pretext, he didn't articulate things very well. And certainly, we know that the stop itself can be a pretext. But the question is whether the seizure for 20 minutes can be a pretext, which is what this was, where they just kept making things up in order to keep him there. And the things they were making up don't seem to justify keeping him there. So then you say, well, it doesn't matter what they made up. What matters is that they could have just done the dog sniff to begin with. But they didn't do the dog sniff to begin with. And they didn't. And I think that, you know, most officers know that what you want to do, you go through the steps of the routine traffic stop. And I understand that the things that the Supreme Court and that this Court have said that you can do. But does the Supreme Court ever say that once you've decided not to give somebody a ticket or at least said that you're not going to give them a ticket, that you can then do a warrant check and an ex-felon check for 15 minutes after you've already decided that there's nothing more to be done about the traffic stop? I would just say that what the officer said to the driver, to the extent that what you're thinking about is the subjective motivation of what this particular officer intended, that is just not relevant. You look at objectively, you stop someone for a traffic violation, and you can go through the steps of the routine traffic violation. Why? Tell me why. Give me a theory, an explanation. Is there a case that says that you can do that? The cases we cite in our brief, all the things that you can do. But they don't say you can do it even if you have no intention of giving them a ticket. Well, there are cases that say that the subjective motivation of the police officer is irrelevant. As to the stop, but as to what you do after that? Yes, as to the steps that you go through, and then in particular, as to whether or not you have reasonable suspicion based on the totality of the circumstances. The totality, counsel, consists of what the officer's doing because of his own mental process. Okay? So he's eliciting information. So he goes through the normal license and warrant check. In passing, one of our cases is acknowledged that that seems to be part of the standard. Then he says, okay. And then he turns around, and then he somehow elicits the information that he's a felon. Okay. So now he's got a routine, apparently, that once you find out somebody's a felon, you're entitled to hold them there and go through a prolonged 15 minute or whatever it was, wait for the compliance as to whether he's a registered felon. It was actually, Zirkle, Deputy Zirkle did testify that it is routine for him, and I mean, that it is routine practice. But that makes no difference. People routinely do unconstitutional things. There's no help. But can you finish the answer to my question? Yes. Because you're saying it's subjective. Well, now you're telling us under the objective test of what would a reasonable officer do. Now you're saying, well, Zirkle says it's his practice. No. That doesn't cut it. What? Or even if it's the department's practice, it still doesn't cut it. That when they discover that a defendant is a felon or a driver is a felon, they do an ex-felon registration check as part of a routine traffic stop. All right. Tell me why, if they can do that. They can't just stop anybody on the road and say, stay here while I do a routine felon check. Without the traffic violation. Well, because that would be unconstitutional. But what's the difference? What's the difference? We, you know, the officers are between a rock and a hard place, right? I mean, they're told, here are the things that you're allowed to do, and those are the things that they do. And a computer check is a routine part, and you're allowed to do it, and you're allowed to get them out of the car, and you're allowed to get the passenger's license. But they're not allowed to do this under state law, right? Oh, well, absolutely. I think you could do all of those things under state law. I think, as I said, as we explained in our brief, the judge just completely misinterpreted this two sentences of dicta in this Beckman case. Beckman, in the case of Beckman, that case stands for no more and no less than that you cannot continue to detain a vehicle when you have no reasonable suspicion. There was no reasonable suspicion in Beckman. It had nothing to do with telling the person that you're free to go. When did the reasonable suspicion arise here? In this case, when the officer approached the vehicle and smelled methamphetamine coming from the interior of the vehicle. And if the district judge didn't believe that, then the case would be over? Well, then you'd have to consider the other. I mean, there were some other factors. And I think the smell of methamphetamine, the fact that both officers smelled drugs coming from the car, but there was also different drugs. One smelled. Yes. His story was maybe a credibility. But I still don't quite understand. You keep saying he had reasonable suspicion as soon as he smelled the meth. Yes. Okay. So why does he then need to prolong the stop after that for 19 minutes before he gets around to the original basis for reasonable suspicion? To build an investigation, it sounds like, to see if he can come up with anything else to reinforce reasonable suspicion. To confirm or dispel. I mean, that's what Terry says. Dispel what? What is the fact that he's a felon got to do with whether they smell meth in the car? That is not. I don't think that that is related. Except for. So that's the point. He's going off on these other investigative missions, and all it does is prolong the stop. And there is jurisprudence on prolongation. And you're struggling. We're struggling to find what's the logical connection. The justification for a stop that morphs into 23 minutes. Because there's a tag on of three minutes for the dog sniff. If this had been a dog sniff case that took three minutes after a pretextual stop, we wouldn't be here. I think I think that what the officer, you know, from the officers. From the perspective of an objective officer, I guess, you know, he's going through and doing this is this. This is how officers are trained to do traffic stops. He's going through all the things while he's got while he's running those computer checks. He's using that time to gather information to confirm or dispel his reasonable suspicion. And ultimately, of course, trying to get. But the case is about computer checks. I mean, I've looked at them. And they're assuming that what you're doing is you're doing it all at once. I mean, certainly checking to find out whether somebody has a driver's, whether the driver's actually say they are, whether they have a driver's, because you can write them a ticket, you have to know who they are, and so on. Right? So that makes perfect sense. You have to find out whether this person exists and whether he has a driver's license, whether his driver's license is his driver's license, and so on. The cases don't really go beyond that. They don't say, and it's okay to make it longer, to get the warrants and do the ex-felon check and all that. I mean, they assume you're doing one thing, and but here they distinctly did two different things, maybe three, actually three, because they didn't even he didn't even purport to be checking the license. He said he was doing a warrant check, so because he said he wasn't going to write him a ticket, but even so let's take that out of it. Let's assume that was okay. Then he comes back and says, now I'm going to do an ex-felon check, separately and distinctly. What does that have to do with anything? And is there any case that upholds it? None, I think. They're actually, and I'm sorry that I just. By the way, you've now hit the minute. No, I'm just saying you've now taken as much time as this traffic stuff. Not yet. You haven't gotten there yet. Not yet. Two more minutes. As much as three minutes coming. Yes. The initial, the initial traffic stuff. Yes. The officer is going through the routine procedure of a traffic stop. Now, could he have said, I'm not going to do that because I have reasonable suspicion. And so now that, especially now that my backup is here, right? I mean, you get the two minutes in. Could he have just said, okay, right now we're going to stop with this whole traffic stop thing and I'm going to run this dog around the car. Yes, he could have. Officers know that just because they think they have reasonable suspicion, that might not be good enough. What's good enough is consent. That's the gold standard. You get, you get a defendant, you get a driver to consent to a search, and then you're solid. And so you go through the steps and then you, and, and officers know that. You see somebody for 15 minutes for no reason, in an attempt to get, for no objectively valid reason, that what, let's assume it was okay through the warrant check. Still, he's, at that point, it doesn't impress me to say it was routine. That doesn't help. I want to know what the justification is. And so essentially the justification is he wants to see if he can keep them there long enough to get consent. That's not a reason. I think that if, you know, the cases, this Court's cases and the Supreme Court's and most other circuits say that as part of a routine traffic stop, you can run a computer check. Now there are other circuits, and I'm sorry, I just found them last week and don't have them cited, that, that, that specifically say criminal history check. I didn't find any Ninth Circuit cases that talked specifically about criminal history check. But, but that is, you know, officers are trained that, that they can run these computer checks. And, and if they can't, you know, sure, somebody tell them. But, but this particular, I mean, until somebody tells them that they can't do this, this is, this is part of the routine. It is a computer check. It is part of a routine traffic stop. They go through this routine traffic stop. They get to the end of it. They try to get consent. And then when consent is denied, they go back to what, from the very beginning, they have reasonable suspicion. You mean it takes 19 minutes every time they pull you over and say your bulb is out? You got to wait 20 minutes for that? No, the Zirkle, Deputy Zirkle testified that his, the, the normal traffic stop is about 10 to 15 minutes. And it's true that the ex-felon check was, it was almost six minutes that he was waiting. And he actually called into dispatch and said, what's going on? Do you have, you know, this is, this is taking too long. Do you have an answer for me? And, and the answer came back. She said, I'm on the phone with them right now. I'll call you right back. And everything checked out. Right after they, he called in the ex-felon check, he asked the defendant, you know, are you registered? What address are you registered at? And there was some confusion about whether he was registered at the right place. By the way, it was helpful to have this video. Oh, good. It's amazing how you can see what's going on and how it probably, you know, helps. Yes. I am. Disputes about what really went on. Yes. I am so far over my time, unless the Court has any questions. Well, we gave you three minutes. Okay. Good morning. May it please the Court, my name is Janice Hubbard and I represent the respondent, Mr. James Evans. Your Honors, this case was decided on the facts. It was a factual decision by the judge as to how long Mr. Evans was detained and why. The judge viewed and determined the credibility of the witnesses, and he found them lacking. The judge actually said it as to what? The judge actually said it, that he thought the officers intentionally, no, I won't say intentionally, but carelessly violated Mr. Evans' rights. He found, first off, that there was no probable cause by the DEA agents. They didn't have any probable cause, even though they had their three sources of information. Then he – Did he find that? I thought all he found was – this is what I thought he found. I thought he found that something was pretextual. I mean, if it was to stop, then obviously he's wrong, and maybe he must have meant something else. I don't know. But then all I thought he said about the DEA was that it wasn't – the collective action doctrine didn't apply, and he was actually maybe wrong about that, because the reason he gave doesn't work very well. I don't remember him saying that there wasn't probable cause or reasonable suspicion based on what the DEA knew. There probably wasn't, but I don't remember him saying that. He did say – he said there was no probable cause, that they had to develop that probable cause through the traffic stop. So they didn't have probable cause prior to that. And then the Court also found that the traffic stop winds up being unproductive. That's at page 205. The inference clearly is that the Court did not believe the deputies or them. The deputy was directed by DEA to find a way to stop this car and to search it. Judge Hicks found this to be a subterfuge poster child of a case. He didn't base his decision on the stop. He based his decision on the search, and he indicated that this was the weakest search he had ever seen, and he found that it should not have happened. This clearly exceeded the time for a routine traffic stop for a lane change violation, especially one where the deputy had indicated, as the Court said, that he was only going to give him a warning. During the traffic stop, while he is waiting for dispatch, the deputy could have run his dog, but he didn't, and the deputy testified the reason why he didn't is because it's not how he normally chooses to do, or the quote is, would not be the way I normally conduct an interdiction traffic stop. And that's at page 83. Judge Hicks heard this testimony and also heard that this was supposed to be a lane change violation. As to the Court's question about a safety issue, that was examined on cross-examination, and the deputy did not have any additional officers there when he did decide to run the dog. It was clear on cross-examination that Raven, the Washoe County Sheriff's Office helicopter, was flying above. They had the DEA agents located nearby, and the Nevada Highway Patrol trooper was on scene shortly thereafter. So he had sufficient cover. He could have chosen to run that dog at any time, but he waited until after the 19 minutes, after he told Mr. Evans he was free to go, and after Mr. Evans had denied the search. This is a clear subterfuge case. They didn't have a basis. Well, subterfuge stops are not, you know. Right. I don't have an issue with the stop. Clearly, there's a traffic violation, although as the Court indicated, that's a pretty minor violation, but it is a violation. The Court did not make its decision based upon the traffic stop. It made its decision based on the search and indicated that this was the worst search that he had ever seen. As the Court indicated, the deputy did lack credibility. You have a deputy who states he smelled an odor of methamphetamine, but then he's looking for a reason to arrest by checking the ex-felon registration to his home. The methamphetamine was dry. It was double-bagged and several feet away from the deputy, so there's no way he could have smelled it. So the deputy admitted that it must have been other methamphetamine in the car, but then when we asked about did he search the vehicle, he admitted he used his $75,000 worth of equipment, that they looked in the gas tank, they looked in the dash, they used their density meter. There was no other methamphetamine. The deputy lacked credibility in this case. But there was no finding by the district court as to that. Is that right? There was no specific finding. There was a finding that this was the weakest search he'd ever seen, that this was a bad search. So the implication is that the deputy lacked credibility. Well, it seems to me that if the case were remanded and the district court were asked to find the facts, he has a transcript of what they said the first time, and it will be difficult for the officers to change their testimony as to what they smelled and when and how. And he either will believe that or he won't, and then we'll proceed, we would proceed from there. If he didn't believe they smelled anything, whether they smelled, one said methamphetamine, one said marijuana. I don't really know what he said. But he will be in a position to make a finding as to whether he believes that they did that. If they didn't, we have a different case. Well, Your Honor, you also have the fact that the deputy indicated that Ms. McConnell's pulse was beating, and she was so nervous that he could see from several feet away that her pulse was beating. And yet on the video, you can see that Ms. McConnell is not nervous at all. Neither party is nervous. Well, that's another fact that the district court would take into account and make credibility funds. That's true, Your Honor. But the court could also make, affirm the court just based off on the Illinois v. Cabales case that says that dogs should be run during the routine portion of a traffic stop. Here the deputy had 19 minutes even extended as long as he did, which was not a valid extension. But he had 19 minutes to run the dog that he had in his vehicle. And he chose not to because that's not how he does it. So based just upon the fact that he chose to wait and not run the dog during the routine portion of the traffic stop, the court can affirm the district court, Judge Hicks. In this case, Judge Hicks was very specific that this was the weakest search he'd ever seen. He was seized beyond the time that's reasonable under our Constitution, where it's directly from Judge Hicks. Law enforcement officers carelessly disregarded the law. The deputy chose not to run the dog during the routine portion. And the deputy completes the stop. He 18, 19 minutes into it, does the expel and registration. He checks to make sure he's registered at his home. And then he calls him back and asks all those questions. And then he asks for permission to search. And when Mr. Evans says no, that's when he chooses to detain him again and run the dog. And that's a clear violation. He could have done it differently. He had law enforcement there. He had backup. He had Raven flying up above. He had the DEA agents nearby. He had the Nevada Highway Patrol trooper on scene. This deputy chose to wait. And that is what's the violation, at least one of the numerous violations in this  And that's the reason why he was on the side of the road for so long. But that is, I mean, looking more closely at what the district court held, he didn't he used the word subterfuge, which confused everything, but he wasn't holding that it was invalid because of the subterfuge stop. He was holding that it was invalid because after a subterfuge stop, they, this kind of traffic stop for an extended period of time was an unlawful seizure. That was his ultimate holding. And it was really, he was observing that it was a subterfuge stop, but that wasn't the basis of the ruling, was it? Correct, Your Honor. He was seized beyond the amount of time that's reasonable under our Constitution is what Judge Hicks stated. And Judge Hicks agreed with you that you cannot hold somebody to do an expelling check, a warrants check, and then make sure they're registered to their home. So if we – but we still have this problem that the district court never made a finding on the reasonable suspicion based on whether they actually had an odor and whether they – the odor would have been sufficient. So do we need to remand immediately, or do we rule first on the existing ground and then say, well, there may be another one, and therefore remand? Or how do we proceed? Your Honor, I believe the Court can affirm him just upon how the deputy extended the stop illegally. He detained Mr. Evans beyond the time that's normal for a traffic stop. It was not within the 10 to 15 minutes. Fifteen minutes would be the outside, and this went beyond that. I'm sure the Court's been stopped. People do not get ex-felon registrations run. They don't get registrations run to their home on whether or not they're registered at their house for a routine traffic stop. This deputy expedited the stop. Apparently, maybe they do in Nevada, but what does that have to do with anything? It extended the stop beyond the routine traffic stop, and that is what violates the law, and that affirms Judge Hick's decision that he was seized beyond the routine portion, seized beyond the amount of time that's reasonable under our Constitution. He had no basis to seize him that long, and he had no basis for the second detention. He was looking for a reason to arrest. All right, thank you, Counsel. Thank you. All right, we'll give you a minute or two, if you'd like, for rebuttal. Thank you. I won't take long. I just want to make three very quick points. Let me ask you this question. It seems to me that your opposing counsel is suggesting that regardless of what happened at the outset, whether the officers sniffed it or didn't sniff it before the dogs did, that the problem is you waited until the end of the normal traffic stop to then add on the dog sniff theory and to investigate that, that it could have been done along with the traffic stop, and there was no reason to extend the traffic stop beyond the normal period. Yes. I think that, first of all, what Cabales stands for, she said, the counsel said that Cabales says that you should run the dog around during the routine traffic stop. What Cabales said is, if you don't have reasonable suspicion, that's the only lawful way to do it. You can't extend the detention to run the dog without. All right. But if they did have reasonable suspicion, because of the – because there was actually a smell, which we couldn't decide, but let's assume it for now, then it's still just reasonable suspicion. So you still have a prolongation problem. Yes. In other words, if you have reasonable suspicion to think there's methamphetamine, then find out if there's methamphetamine. But that's not what they did. They waited 20 – so you still have a very reasonable suspicion problem, even if you just focus on the methamphetamine, don't you? Well, I guess it goes back to this sort of the fundamental issue that we're grappling with here, which is, can an officer who pulls someone over for a traffic violation go about the business of the routine traffic stop? Well, that's true. But the only thing I'm pointing out is that the possible separate reasonable suspicion on the drug odor smell doesn't seem to help you, because then you have a second problem with regard to prolongation. It doesn't help anything. Yes. I think that – so then the question is, if you have reasonable suspicion, or once the officer believes that they have reasonable suspicion, how quickly do you have to shift gears from the traffic stop to pursue the issue of reasonable suspicion? And I don't know of any case in the circuit that explains that. The two factual things I just wanted to say really quickly – I apologize – is at the end of the day, they found methamphetamine and marijuana and a pipe with drug residue in the car. So this idea that you couldn't possibly smell – there was no testimony about whether that was meth residue or marijuana residue. And I don't know if you use the same kind of pipe. We can't decide that. Right. So I'm just saying that the idea that it would be impossible to smell this because of the way it was wrapped. I know that, but it's just not our problem right now. And yes. Okay. That's all. Thank you. Okay. Interesting case. Case is currently to be submitted.
judges: REINHARDT, FISHER, BERZON